UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LEROY F.,[1]

        Plaintiff,

   v.                                  1:20-CV-76 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## DECISION AND ORDER

Plaintiff Leroy F. brought this action under the Social Security Act (the "Act"), seeking review of a determination by the Commissioner of Social Security (the "Commissioner") that he was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 8. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 13. Plaintiff replied. Dkt. 15.

For the reasons below, the Court grants Plaintiff's motion in part and denies the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this Decision and Order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

On September 30, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB")[2] alleging disability since April 28, 2016.  Tr. 145-151.[3]  Plaintiff's application was initially denied by the Social Security Administration on November 16, 2016.  Tr. 84.  Plaintiff then filed a written request for a hearing on November 22, 2016, Tr. 93, which took place before an Administrative Law Judge ("ALJ") on August 8, 2018.  Tr. 28-72.  The ALJ issued a written decision to Plaintiff on December 19, 2018, denying his claim in part.[4]  Tr. 9-27.  The Appeals Council denied Plaintiff's request for review on December 21, 2018.  Tr. 1-6.  Plaintiff then commenced this action.  Dkt. 1.

## LEGAL STANDARDS

### I.  District Court Review

The scope of review of a disability determination involves two levels of inquiry.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  First, the Court must "decide whether [the Commissioner] applied the correct legal principles in

---

[2] One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  The Social Security Administration uses the same five-step evaluation process to determine eligibility for both DIB and Social Security Income ("SSI") programs under the Act.  *See* 20 C.F.R §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

[3] All references to the administrative transcript (Dkt. 5) are denoted "Tr. ____."  Page numbers for documents contained the transcript correspond to the pagination located in the lower right corner of each page.

[4] The ALJ concluded that Plaintiff met the criteria for disability as of June 20, 2017, Plaintiff's 50th birthday.  Tr. 14.

making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II.   **Disability Determination**

An ALJ evaluates disability claims through a five-step process established by the Social Security Administration to determine if a claimant is disabled. *See* 20

C.F.R. § 404.1520(a)(2).  At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* § 404.1520(a)(4)(i).  If so, the claimant is not disabled. *Id.*  If not, the ALJ proceeds to step two. *Id.* § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 404.1520(a)(4)(ii).  If there are no severe impairments, the claimant is not disabled. *Id.*  If there are any severe impairments, the ALJ proceeds to step three. *Id.* § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii).  If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.*  But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* § 404.1520(a)(4)(iv); (e).  The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments— both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for his collective impairments. *See id.* §404.1545.  After determining the claimant's RFC, the ALJ completes step four. *Id.* § 404.1520(e).  If the claimant can perform

past relevant work, he is not disabled and the analysis ends. *Id.* § 404.1520(f). But

if the claimant cannot perform past relevant work, the ALJ proceeds to step five.

*Id.* § 404.1520(a)(4)(iv); (f).

In the fifth and final step, the Commissioner must present evidence showing

that the claimant is not disabled because the claimant is physically and mentally

capable of adjusting to an alternative job. *See id.* §§ 404.1520(a)(4)(v), (g); *see also*

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Specifically, the Commissioner

must prove that the claimant "retains a residual functional capacity to perform

alternative substantial gainful work which exists in the national economy." *Rosa v.*

*Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604

(2d Cir. 1986)).

## DISCUSSION

## I.     The ALJ's decision

The ALJ evaluated Plaintiff's claim for benefits under the process discussed

above. At step one, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since the date of his application. Tr. 15.

At step two, the ALJ determined that Plaintiff had the following severe

impairments: "chronic respiratory disorder variously diagnosed as pulmonary

fibrosis and later as interstitial pulmonary disease; and acromioclavicular (AC) joint

arthritic changes." Tr. 16. The ALJ also found that Plaintiff had the following non-

severe impairments: "back strain, colon polyps, gastroesophageal reflux disease

(GERD), history of bilateral hand trauma, and erectile dysfunction." *Id.*

At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the severity of the impairments listed in the regulations. *Id.* In making this finding the ALJ considered Plaintiff's impairments under listings 1.02, major dysfunction of joints due to any cause, and 3.02, chronic respiratory disorders due to any cause. *Id.*; *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A1, § 1.02, 3.02 (2019). The ALJ then determined Plaintiff had the RFC to perform "less than a full range of sedentary work as defined in 20 CFR § 404.1567(a)" with the following exceptions: Plaintiff "can climb ramps and stairs occasionally but never climb ladders, ropes, or scaffolds. The claimant never can work at unprotected heights or with moving mechanical parts. He can have occasional exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritants but never exposure to extreme cold or extreme heat. He frequently can balance and occasionally stoop, kneel, crouch, and crawl. He frequently can handle, finger, and feel bilaterally." Tr. 17. The ALJ continued that Plaintiff would also be limited to "indoor, climate-controlled jobs" and "would need to carry a portable oxygen tank in the dominant hand." *Id.*

At step five, considering Plaintiff's age (prior to June 20, 2017), education, work experience, and RFC, the ALJ relied on the testimony of a vocational expert to determine that jobs exist in significant numbers in the national economy that the Plaintiff can perform—including order clerk, mail sorter, and inspector. Tr. 21-22. As a result, the ALJ concluded that Plaintiff was not disabled during the period

alleged in his application filed on September 30, 2016, but was disabled from June 20, 2017, through the date of the ALJ's decision.  Tr. 22.

## II.  Analysis

Plaintiff makes four arguments.  Dkt. 8-1.  First, he asserts that the ALJ erred in failing to consider his need for frequent medical treatment.  *Id.* at 17. Second, he argues that the RFC was not based on medical opinion evidence, and that the ALJ did not attempt to complete the record where such evidence was lacking.  *Id.* at 19.  Third, he claims that the ALJ violated the treating physician rule in her consideration of the only medical opinion of record.  *Id.* at 24.  Fourth, he asserts that the ALJ did not meet the evidentiary burden at step five.  *Id.* at 28.

For the reasons set forth below, Plaintiff's third argument has merit and, as such, his motion is granted in part.

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received.  20 C.F.R. § 404.1527(c).  But greater weight generally should be given to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the plaintiff—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the plaintiff's] medical impairments."  *Id.* § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 Fed. App'x 105, 108 (2d Cir. 2008) (summary order).  The opinion of a treating physician is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the plaintiff's] case record." 20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Here, the only opinion weighed by the ALJ[5] was a functional capacity assessment completed by Edward Ventresca, M.D., Plaintiff's treating pulmonologist. Tr. 631. The ALJ assigned "partial weight" to Dr. Ventresca's opinion. Tr. 19. The ALJ found that "Dr. Ventresca's opinion limiting the claimant to a range of sedentary work [wa]s consistent with the medical evidence of the record." *Id.* The ALJ cited multiple treatment records including diagnostic

---

[5] The ALJ characterized responses to a "New York State Department of Motor Vehicles Parking Permit Application For Persons With Severe Disabilities form" given by Ryan Clark, D.O., as a medical opinion but did not assign it weight. Tr. 19 (citing *id.* at 551).

imaging, *id.* at 316, 403, 496, 503; examinations, *id.* at 496, 515, 517, 519, 563, 666; and test results, *id.* at 508, 545; to "support limiting the claimant to [a] range of sedentary work with postural and environmental limitations." *Id.* at 19.  She discounted Dr. Ventresca's opinion, however, "regarding shortness of breath with moderate activity and no strenuous pushing/pulling,"[6] finding these conclusions to be "vague and not defined." *Id.*

In making that evaluation, "the ALJ did not comply with the procedural mandates of the treating-physician rule." *Annis v. Comm'r of Soc. Sec.*, No. 18-CV-1276, 2019 WL 6875231, at *8 (W.D.N.Y. Dec. 17, 2019).  Regarding Dr. Ventresca's findings of Plaintiff's need for unscheduled rest, the ALJ omitted any discussion of "the amount of medical evidence supporting" or "the consistency of [Dr. Ventresca's findings] with the remaining medical evidence." *Greek*, 802 F.3d at 375.  Failing to explicitly consider the *Burgess* factors before assigning weight to those treating opinions was procedural error.  *See Estrella*, 925 F.3d at 95.

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [the Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning '[partial] weight'" to Dr. Ventresca's opinion.

---

[6] Dr. Ventresca specifically opined that Plaintiff "becomes short of breath with moderate activity.  There is no specific time frame to predict when this may occur." Tr. 631.  In response to the question – "How many hours does the patient need to lie down or recline in an 8[-]hour period?" – Dr. Ventresca answered as follows: "nonspecific – patient needs to rest when shortness of breath occurs." *Id.*  In the space provided for comments, Dr. Ventresca wrote, "[s]hortness of breath occurs with moderate activity due to reduced lung volume capacity." *Id.*

*Id.* at 96, (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also*

*Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where

"application of the correct legal principles to the record could lead [only to the same]

conclusion"). The Court finds no such assurance here.

    The only reason the ALJ gave to discount Dr. Ventresca's opinion on this

point was that this part of the opinion was "vague and not defined." Tr. 19. But she

adopted the portions of Dr. Ventresca's opinion that matched the RFC. *Compare id.*

at 631 (Dr. Ventresca's opinion limiting Plaintiff to lifting and carrying 10 pounds

"[o]ccasionally, i.e. up to 1/3 of the work day [sic]," standing and/or walking no more

than two hours per day, and no limitation for sitting), *with id.* at 17 (Plaintiff's RFC

for "less than a full range of sedentary work as defined in 20 C.F.R. § 404.1567(a)").[7]

As such, the ALJ limited the application of Dr. Ventresca's opinion without any

identifiable "good reasons" for doing so. In fact, there may have been reasons to

credit that opinion entirely.

---

[7] 20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work
involves lifting no more than 10 pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools. Although a sedentary job
is defined as one which involves sitting, a certain amount of walking and standing
is often necessary in carrying out job duties. Jobs are sedentary if walking and
standing are required occasionally and other sedentary criteria are met."

For example, records from Plaintiff's other medical sources,[8] as well as Dr. Ventresca's own treatment notes,[9] and Plaintiff's testimony[10] support Dr. Ventresca's findings. And none of the other evidence cited by the ALJ in her RFC analysis, *id.* at 19 (citing *id.* at 316, 403, 496, 503, 508, 515, 517, 519, 545, 563, 666);[11] or anywhere in her decision contradicts a need for breaks but, in fact, supports that Plaintiff continued to have shortness of breath. *See id.* at 18-20 (The ALJ's references to Plaintiff's history of respiratory illness, productive cough, and shortness of breath). By ignoring the evidence in support of Dr. Ventresca's opinion, the ALJ failed to consider the "complete medical record," *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996), and did not base the RFC on "all the relevant evidence." 20 C.F.R. § 404.1545(a)(1).

---

[8] *See e.g.*, Tr. 424, 469, 521, 524-25, 528-29 (records from various providers documenting Plaintiff's wheelchair use). One provider noted that Plaintiff "needs a [wheelchair] due TO [sic] his poor tolerance of activity." *Id.* at 528.

[9] *See e.g.*, *id.* at 401 (Dr. Ventresca's report that Plaintiff was "currently requiring oxygen at rest and for ambulation. Feels respirations are limited and [Plaintiff] describes 'short breaths.'").

[10] *See e.g.*, *id.* at 52, 55 (Plaintiff's hearing testimony describing shortness of breath and coughing fits triggered by routine exertional activities such as "trying to walk kind of quick" and bending down and "pull[ing] the laundry out of the washer"). Plaintiff also testified to unpredictable coughing fits occurring "hourly . . . [or] continuous for a good portion of the day" without a known cause. *Id.* at 40.

[11] The ALJ cites these records in part to show that Plaintiff's condition improved over the relevant period. *See id.* at 19 (The ALJ's findings that "[Plaintiff's] symptoms slowly improved" and that "he was able to reduce his oxygen" dependency). As the Second Circuit observed in *Colgan v. Kijakazi*, 22 F.4th 353 (2d Cir. 2022), however, "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *See Colgan*, 22 F.4th at 362 (applying the court's holding in *Estrella*, 925 F.3d at 97, to cases involving physical impairments).

11

Under the Commissioner's rules, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).[12] Moreover, if an ALJ rejects an opinion or part of an opinion about a particular limitation, that finding must be based on other medical evidence in the record, not the ALJ's lay judgment. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a plaintiff's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute h[er] own judgment for [a] competent medical opinion. While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, [s]he is not free to set h[er] own expertise against that of a physician who submitted an opinion to or testified before h[er].") (citation and original alterations omitted).

Because the ALJ failed to consider evidence that conflicted with her determination in significant ways, the outcome may well have been different had the ALJ adhered to the regulations. *See NLRB v. Enter. Ass'n of Steam & Gen. Pipefitters*, 429 U.S. 507, 522 n. 9 (1977); *see also Zabala*, 595 F.3d at 410 (remand was not appropriate where "application of the correct legal principles to the record could lead [only to the same] conclusion"). Given the vocational expert's testimony

---

[12] "Social Security Rulings . . . are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

that ten-to-twenty percent of "off task time" during an eight-hour workday would erode the job base available to Plaintiff, Tr. 63, 66, the ALJ's failure to consider sufficiently Plaintiff's need for unscheduled rest was error. Remand is required so the ALJ can properly consider Dr. Ventresca's opinion.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is **GRANTED** in part, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. 13) is **DENIED**.  The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this opinion.


SO ORDERED.


Dated:          March 17, 2022
                Buffalo, New York


                                        JOHN L. SINATRA, JR.
                                        UNITED STATES DISTRICT JUDGE